NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAKILL YOUNG, | Civil Action No: 17-1668-SDW-LDW |
| Plaintiff, | |
| v. | **OPINION** |
| CITY OF NEWARK, et al., | |
| Defendants. | August 15, 2017 |

**WIGENTON**, District Judge.

Before this Court is Defendant City of Newark and Sergeant Jerome Ramsey's ("Defendant Ramsey"), (collectively, "Defendants"), Motion to Dismiss Jakill Young's ("Plaintiff") Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

Jurisdiction is proper pursuant to 28 U.S.C. § 1331 and § 1367(a). Venue is proper pursuant to 28 U.S.C. § 1391. This Opinion is issued without oral argument pursuant to Federal Rule of Civil Procedure 78.

For the reasons stated herein, the Motion to Dismiss is **GRANTED** in part and **DENIED** in part.

I.   **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff is a resident of Newark, New Jersey. (Am. Compl. ¶ 4.) Defendant City of Newark is a municipal corporation organized and existing under the law of the State of New Jersey and

1

Defendant Ramsey was a police officer for the City when the events at issue occurred. (*Id.* ¶¶ 5-6.) Defendants Tyrone Johnson ("Defendant Johnson") and Ms. Johnson were private citizens residing in the State of New Jersey when the events at issue occurred. (*Id.* ¶ 7.)

This matter arises from the March 11, 2015 arrest of Plaintiff pursuant to a warrant which Defendant Ramsey "and or [sic] an unknown defendant officer directly swore out . . . against plaintiff." (Am. Compl. ¶¶ 12, 37.) On July 26, 2014, several months before Plaintiff was arrested, Defendant Johnson was "one of the alleged victims [of a] . . . . shooting incident." (*Id.* at ¶¶ 11-12.) At some time between the shooting and Plaintiff's arrest, Ms. Johnson reported a separate incident: "an individual wearing a blue North Face was hanging in the neighborhood making her and her children feel unsafe." (*Id.* ¶ 15.) Defendant Ramsey, the officer investigating Ms. Johnson's complaint, then texted Ms. Johnson a full-body picture of Plaintiff in which he was wearing a Superman t-shirt. (*Id.* ¶ 16.) Ms. Johnson confirmed that Plaintiff was, in fact, the person "making her and her children feel unsafe." (*Id.*)

At some point after Ms. Johnson identified Plaintiff as the person she complained of, Defendant Ramsey, who also came to investigate the shooting, assembled a photo array to show Defendant Johnson. (*Id.* ¶ 16.) Defendant Ramsey included the same picture of Plaintiff he had previously texted to Ms. Johnson in the photo array, although he only included the upper-body portion of the picture. (*Id.* ¶ 17.) Defendant Johnson then identified Plaintiff as the perpetrator of the shooting. (*Id.*) Defendant Johnson also stated, for the first time, "that the person who shot him wore a t-shirt with a Superman logo on the front." (*Id.*)

Plaintiff was arrested pursuant to an arrest warrant, (Am. Compl. ¶ 37), and charged on approximately March 11, 2015, for a number of crimes arising out of the shooting incident. (Am. Compl. ¶ 11.) Plaintiff was also indicted by a grand jury and incarcerated. (Am. Compl. ¶ 37.)

However, on approximately April 4, 2016, Plaintiff learned of the photo array procedure Defendant Ramsey used in having Defendant Johnson identify Plaintiff as the perpetrator of the shooting. (Am. Compl. ¶¶ 12, 14.) According to Plaintiff, that photo array procedure, which Plaintiff claims was "suggestive," had not previously been revealed and was not disclosed in the arrest warrant application or grand jury presentation. (*Id.* ¶ 12.)

At some point during the criminal proceedings, Plaintiff requested a pretrial *Wade* hearing to challenge Defendant Johnson's identification of Plaintiff. (Am. Compl. ¶ 20.) However, Defendant Johnson and Ms. Johnson were never produced and the criminal charges against Plaintiff were dismissed on July 15, 2016. (*Id.*; Antoine Cert., Ex. 4.)

On March 10, 2017, Plaintiff filed a six-count Complaint in this Court, alleging that Defendants acted under color of law to deprive him of his federal and state constitutional, statutory, and common law rights. Plaintiff subsequently filed an Amended Complaint on April 23, 2017. Defendants Ramsey and City of Newark filed the instant Motion to Dismiss on May 5, 2017. Plaintiff filed his brief in opposition on May 23, 2017 and Defendants filed their brief in reply on June 10, 2017.

**II.    LEGAL STANDARD**

An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief").

In considering a Motion to Dismiss under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (external citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.*

### III. DISCUSSION

Although Plaintiff's Amended Complaint lacks clarity, at its core, it alleges that Plaintiff was wrongfully arrested, detained, and prosecuted in violation of his constitutional rights under both the United States and New Jersey constitutions and federal and state law. This Court construes Plaintiff's Amended Complaint to contain the following claims:

A. <u>Section 1983 Claims</u>

42 U.S.C. §1983 provides in relevant part:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

Section 1983 does not itself create any rights, it merely provides "private citizens with a means to redress violations of federal law committed by state [actors]." *Woodyard v. Cty. of Essex*, 514 Fed. App'x 177, 180 (3d Cir. 2013); *see also Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906-07 (3d Cir.1997); *O'Toole v. Klingen*, No. Civ. 14-6333, 2017 WL 132840, at *5 (D.N.J. Jan. 13, 2017); *Thomas v. E. Orange Bd. of Educ.*, 998 F. Supp. 2d 338, 350 (D.N.J. 2014). Similarly, "civil claims for violations of the New Jersey Constitution can only be asserted by way of the New Jersey Civil Rights Act ['NJCRA']." *Martin v. Unknown U.S. Marshals*, 965 F. Supp. 2d 502, 548 (D.N.J. 2013). Because the NJCRA is "interpreted analogously to Section 1983," Plaintiff's state constitutional claims will also be analyzed under Section 1983. *O'Toole*, No. Civ. 14-6333, 2017 WL 132840, at *5; *see also Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443 (D.N.J. 2011) (noting that the NJCRA "was modeled after [] § 1983").

To bring a Section 1983 claim, "a [] plaintiff [must] prove two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011); *Hilton v. Whitman*, No. Civ. 04-6420 (SDW), 2008 WL 5272190, at *4 (D.N.J. Dec. 16, 2008) (noting that the plaintiff must "identify the exact contours of the underlying right said to have been violated."). For a municipality to be held liable under the theory of respondeat superior, the constitutional harm alleged must be caused by a municipal policy or custom. *Monell v. Dep't of Soc. Serv. of New York*, 436 U.S. 658, 694 (1978).

Here, Plaintiff alleges that Defendants' actions violated his Fourth Amendment rights.[1] (Am. Compl. ¶ 25.) The Fourth Amendment, which protects persons from "unreasonable searches and seizures," prohibits false arrest, false imprisonment, and malicious prosecution. U.S. Const. amend. IV; *see also Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 913 (2017) ("This Court decided some four decades ago that a claim challenging pretrial detention fell within the scope of the Fourth Amendment.").

### a. *Improper Training and Supervision* (Count Three)

In Count Three of the Amended Complaint, Plaintiff alleges that Defendant City of Newark violated his constitutional rights by failing to properly train and supervise Defendant Ramsey. (Am. Compl. ¶¶ 28-32.) In order to hold such a municipality liable under Section 1983, the constitutional harm alleged must be caused by a municipal policy or custom and the municipality must not have "change[d] the policy or employ[ed] corrective practices." *Argueta v. U.S. Immigration & Customs Enf't*, 643 F.3d 60, 72 (3d Cir. 2011); *see also Monell*, 436 U.S. at 694; *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 223 (3d Cir. 2015); *Mattern v. City of Sea Isle*, 131 F. Supp. 3d 305, 318 (D.N.J. 2015). Here, Plaintiff fails to sufficiently plead that such a custom or policy exists. Plaintiff alleges only that a prior investigation by the Justice Department

---

[1] Although the Amended Complaint also references the Fifth Amendment, Plaintiff has abandoned any such claim in his Opposition to Defendants' Motion to Dismiss. (*See generally* Pl.'s Br. Opp.) In addition, although the Complaint references the Fourteenth Amendment, Plaintiff's false arrest, false imprisonment, and malicious prosecution claims are properly raised under the Fourth Amendment. *James v. City of Wilkes–Barre*, 700 F.3d 675, 680 (3d Cir. 2012); *O'Connor v. City of Phila.*, 233 Fed. Appx. 161, 164 (3d Cir. 2007); *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 918–19, 197 L. Ed. 2d 312 (2017) ("If the complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment.") Finally, to the extent Plaintiff intended to assert a separate due process claim based on Defendant Ramsey's alleged negligent administration of the photo array, such a claim "attempts to inject a due process argument into what is primarily a fourth amendment claim . . . . negligence by public officials is not actionable as a due process deprivation of a civil right." *Wilson v. Russo*, 212 F.3d 781, 789 n.5 (3d Cir. 2000). Accordingly, this Court considers Plaintiff's constitutional claim regarding Defendant Ramsey's conduct of the photo array as part of the false arrest, false imprisonment, and malicious prosecution claims.

and the United States Attorney's Office revealed that the Newark Police Department's "inadequate training and supervision in the area of investigations . . . contributed to a pattern of constitutional violations." (Am. Compl. ¶ 29.) Plaintiff's conclusory and vague references to prior practices are insufficient to show that Defendant Ramsey's actions here were part of a municipal policy or custom of wrongful seizures, arrests, or prosecutions. Accordingly, Plaintiff has failed to plead facts sufficient to sustain a Section 1983 claim for improper training and supervision and Count Three will be dismissed.[2]

### b. *False Arrest and Imprisonment* (Count One)

In Count One of the Amended Complaint, Plaintiff contends Defendant Ramsey is liable for violating Plaintiff's constitutional rights under the theories of false arrest and false imprisonment. (Am. Compl. ¶¶ 23-25.) In order to state a false arrest claim, "a plaintiff must establish: (1) that there was an arrest; and (2) that the arrest was made without probable cause." *James v. City of Wilkes–Barre*, 700 F.3d 675, 680 (3d Cir. 2012). Moreover, "where the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." *O'Connor v. City of Phila.*, 233 Fed. Appx. 161, 164 (3d Cir. 2007) (internal quotation marks and citation omitted).

Here, Plaintiff contends that Defendant Ramsey caused Plaintiff to be arrested and detained without probable cause by conducting a suggestive photo array and failing to disclose the procedures he used in conducting the array. (Am. Compl. ¶¶ 23-25.) In moving to dismiss this claim, Defendants argue that Count One is precluded by the fact that Plaintiff was arrested pursuant

---

[2] To the extent that Count Three also alleges a state law tort claim for failure to supervise and/or train, that claim will be dismissed for failure to sufficiently allege that he filed a Notice of Claim and a specialized claim form as discussed in Section III.B *infra*.

7

to an arrest warrant. (Defs.' Br. Supp. at 18-19.)[3] However, as the Third Circuit explained in *Wilson v. Russo*:

> [A]n arrest warrant issued by a magistrate or judge does not, in itself, shelter an officer from liability for false arrest. Rather, a plaintiff may succeed in a § 1983 action for false arrest made pursuant to a warrant if the plaintiff shows, by a preponderance of the evidence: (1) that the police officer "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant;" and (2) that "such statements or omissions are material, or necessary, to the finding of probable cause."

212 F.3d 781, 786-87 (3d Cir. 2000) (quoting *Sherwood v. Mulvihill,* 113 F.3d 396, 399 (3d Cir.1997)). In this instance, Plaintiff has alleged that Defendant Ramsey knowingly failed to disclose that the procedures he used in the photo array. (Am. Compl. ¶ 37.) In addition, the Amended Complaint alleges that there was no evidence linking Plaintiff to the shooting incident other than Defendant Johnson's identification. (*Id.* ¶ 24.)

Finally, Defendants argue that Count One should be dismissed for the additional reason that Defendant Ramsey was not the arresting officer and that he did not apply for a warrant, sign a criminal complaint, or testify before a grand jury. (Defs.' Br. Reply at 2.) However, "§ 1983 liability for an unlawful arrest can extend beyond the arresting officer to other officials whose intentional actions set the arresting officer in motion." *Berg v. Cty. of Allegheny*, 219 F.3d 261, 272 (3d Cir. 2000). As Plaintiff has alleged that Defendant Johnson's identification of Plaintiff via the photo array was the only evidence connecting Plaintiff to the shooting, Plaintiff has sufficiently alleged that Defendant Ramsey's actions set Plaintiff's arrest in motion. Accordingly,

---

[3] Although Defendants also argue that Plaintiff's false arrest and false imprisonment claims are precluded by the issuance of both a criminal complaint and arrest warrant before the arrest, the record currently before this Court is not sufficiently developed to warrant dismissal on that basis. Nor is Defendants' argument that the arrest was supported by probable cause, insofar as Defendant Johnson's identification of Plaintiff was reliable, a proper basis for dismissal of the false arrest, false imprisonment, or malicious prosecution claims at this stage of the proceedings.

dismissal of Plaintiff's Section 1983 claims for false arrest and false imprisonment is not warranted.

### c. *Malicious Prosecution* (Count Five)

In Count Five of the Amended Complaint, Plaintiff contends Defendant Ramsey is liable for violating Plaintiff's constitutional rights under a theory of malicious prosecution. (Am. Compl. ¶¶ 36-38.) "To prevail on a malicious prosecution claim under section 1983, a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *McKenna v. City of Philadelphia*, 582 F.3d 447, 461 (3d Cir. 2009) (citing *Estate of Smith v. Marasco,* 318 F.3d 497, 521 (3d Cir.2003)). In seeking dismissal of this claim, Defendants argue that the intervening decisions by the grand jury, prosecutor, and judge broke the causal chain between Defendant Ramsey's actions and the subsequent prosecution. (Defs.' Br. Supp. at 19-21.) However, "officers who conceal and misrepresent material facts to the district attorney are not insulated from a § 1983 claim for malicious prosecution simply because the prosecutor, grand jury, trial court, and appellate court all act independently to facilitate erroneous convictions." *Halsey v. Pfeiffer*, 750 F.3d 273, 297 (3d Cir. 2014) (internal quotation marks and citations omitted). As Defendant Ramsey is accused of maliciously acting to support the prosecution of Plaintiff while failing to disclose "that his identification process was unreliable," (Am. Compl. ¶ 37), dismissal of Count Five based on intervening actions by third parties is not warranted at this time. Accordingly, Defendants' Motion to dismiss will be denied as to this claim.

B. New Jersey State Law Tort Claims

Counts One, Two, Three, Four, and Five of the Amended Complaint, identify state law claims under The New Jersey Tort Claims Act ("TCA"),[4] which permits individuals to bring tort claims against public entities. N.J.S.A. 59:8-1. The TCA requires that "certain procedures be followed prior to bringing suit against a public entity." *Tripo v. Robert Wood Johnson Med. Ctr.*, 845 F. Supp. 2d 621, 626 (D.N.J. 2012). As such, Plaintiffs seeking to sue under the TCA are required "to sign and file a notice of tort claim (a 'Notice of Claim') with the public entity within 90 days of the accrual of the cause of action." *Id.*; *see also* N.J.S.A. § 59:8-8. "A claimant who fails to file notice of his claim within 90 days . . . may . . . file such notice at any time within one year after the accrual of his claim" if the claimant can show both "extraordinary circumstances" which prevented timely filing of the Notice of Claim and that the defendant is not "substantially prejudiced" by a later filing. N.J.S.A. § 59:8-9. A plaintiff is "forever barred from recovering against a public entity or public employee" if they fail to file a Notice of Claim within the time required. N.J.S.A. § 59:8-8.

Although Plaintiff's Amended Complaint summarily alleges that "Plaintiff timely filed a Notice of Tort Claim Act [sic]," the Amended Complaint fails to provide sufficient factual detail as to both the date on which Plaintiff filed a Notice of Claim and the content of such Notice. (Am. Compl. ¶ 22.) Furthermore, even if Plaintiff did comply with the notice requirements of N.J.S.A. 59:8–4 and 59:8-8, dismissal of his state law tort claims is appropriate for the additional reason that Plaintiff never filed a specialized claim form.

---

[4] The state law claims are: false imprisonment and false arrest (Count One), negligence (Count Two), failure to supervise and train (Count Three), negligent and intentional infliction of emotional distress (Count Four), and malicious prosecution (Count Five).

N.J.S.A. 59:8-6 permits public entities to adopt their own tort claim forms. In this instance, the City of Newark contends that it has adopted such a form, that it mailed its form to Plaintiff, and that Plaintiff never completed and filed the specialized form. (Defs.' Br. Supp. at 26-27.) In response, Plaintiff contends that dismissal of his tort claims is not warranted. (Pl.'s Br. Opp. at 21.) Although he does not explain this contention, Plaintiff cites to *Newberry v. Twp. of Pemberton*, 726 A.2d 321, 325 (N.J. Super. Ct. App. Div. 1999), in support. However, to the extent *Newberry* holds that courts must deem specialized claim forms as timely filed where a claimant substantially complies with N.J.S.A. 59:8-4, that presumption only applies when "the completed specialized form is filed within a reasonable time thereafter." *Id.* at 322; *Howe v. New Jersey Transit Corp.*, No. A-5362-06T1, 2008 WL 2796462, at *5 (N.J. Super. Ct. App. Div. July 22, 2008) ("Here, contrary to *Newberry,* plaintiff neither completed nor returned the specialized claim form to NJT.") Yet, the Amended Complaint does not allege that Plaintiff filed a specialized claim form at any time. Plaintiffs state law tort claims will, therefore, be dismissed.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED** in part and **DENIED** in part. Plaintiff may file a Second Amended Complaint within thirty days. An appropriate Order follows.

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig: Clerk
cc: Leda D. Wettre, U.S.M.J.
Parties